Derbigny, J.
delivered the opinion of the court. Laurent Sigur had bought from Gilbert St. Maxent, for the sum of seventy two thousand dollars, a tract of land extending from the river Mississippi to the Bayou St. John, on which was a saw-mill and a canal emptying into that bayou. In 1797, he sold to F. Riano, for two thousand dollars, the least valuable part of that land; and six months afterwards he sold to the defendant's ancestor all that he had not conveyed to Riano. In the deed to Riano, Sigur had made the following reservation: “reservan *709 dome un pasage de trienta pies de les dos bordos del enunciado canal, para los efectos que me sean convenientes y importantes, en caso de necesidad, con toda la profundidad de el:” reserving to myself “a passage of thirty feet on both sides of the said canal, for the purposes which may be convenient and important to me, in case of necessity, with all the depth of it;" the plaintiff, here the appellee, contends that the reservation is only that of a right of passage, along the canal within the space of thirty feet. The defendant and appellant insists upon its being a reservation of the soil itself. A correct interpretation of this clause is the first step in the decision of the case.
East’n. District.
May 1817
It must be premised that the plaintiff does not dispute to the defendant the property of the canal, but only that of the thirty feet reserved on each side of it.
The word pasage, used in the deed, has created the ambiguity which gave rise to this suit. Yet it is not so much the word itself, as the manner in which it is placed, that has made the phrase a subject of dubious meaning: for had it been said that the vendor reserved thirty feet for a passage, no room would have been left to doubt that he reserved the soil itself, per *710 haps under an obligation not to use it for any thing else than a passage on road: a promise surely of some importance to the purchaser of a tract of land bordering on a water course. Instead however of a reservation of thirty feet for a passage, we have here a reservation of a passage of thirty feet. Does this mean only a right of passage over thirty feet? If we weigh the expression of the clause, in the language in which the contract is written, we see that pasage in Spanish signifies the act of passing, or the place over which we pass, but never the right of passing. There are three sorts of rights of way known to the Spanish laws, each of which has its particular name. The right to pass on foot is called senda: the right to pass on horseback, carrera: that of passing with carriages is named via. They are the equivalents of the latin words iter, actus aud via. These are not mere technical expressions: they are descriptive of the right. But the word pasage alone does not mean any light of way at all; and when described to be thirty feet wide and to run on both sides of the canal, it evidently means something more. Let us see if the other parts of the clause will net explain this.
The vendor owned a saw mill, the canal of *711 which ran through his lands down to the bayou St. John. On selling part of these lands, he reserved a passage of thirty feet on both sides of the canal, and the canal itself in all its length, "un pasage de trienta pies de los dos bordos del enunciado canal, con toda la profundidad de el.” Can it be supposed that he meant to reserve not a foot of ground on the edge of the canal; that he gave up the right of widening it, if necessary; that he kept the bed of the canal to himself, and left the bank of it to another; or, if that bank is to be considered as part of the canal, how far shall it extend? Where is the line which is to divide that bank from the land of the neighboring owner? Is it not evident, that the limit of the thirty feet was intended to be the dividing line between the two proprietors. If that be not the true intent of the reservation, what can be the meaning of these other words, “para los efectos que ne sean convenientes y importantes in caso de necesidad?”—A right of way can never be more nor less than the right of passing by on foot, on horseback, or at most with carts and carriages. What then can be these important purposes for which the reservation is made? Something more is certainly intended to be secured thereby than the mere right of passing. The owner of the canal might find *712 it convenient or necessary to widen it; he might apply the canal to some more important use; he might find it his interest to establish a public road along it; in short, he wished to be at liberty to do with it, as further circumstances might require; he therefore reserved a passage of thirty feet on each side of it, for the purposes which might be convenient and important to him. Does that sound as a simple reservation of a light to pass? We think not.
Should there, however, remain any doubt as to the true sense of this clause, we must next examine whether the subsequent agreement, which took place between the parties, has not removed the uncertainty, if any existed, as to the nature of the reservation.
By the sale to Riano, it had been agreed that the property sold should be surveyed, and that boundaries should be planted to separate the respective lands of the parties. That operation was performed, the 28th of March 1800, in presence of Peter Marigny, the defendant’s ancestor, and of Anthony St. Maxent and Francis Rocheblave, the then acknowleged proprietors of Riano’s tract. By that survey it was found that the limits of that tract, on the S. E. side of the Gentilly road, could not be run, as far as they were de *713 signated in the sale, part of the land described being the property of other more ancient owners. The survey was therefore suspended until the interested parties should agree among themselves as to what should be done. According to the description, given in the sale, however confuse it may be in other respects, the whole of Riano’s land on the S. E. side of the road was to be situated on the left side of the canal; all the land on the right side was consequently part of the tract sold to P. Marigny, who had bought from Sigur all that had not been sold to Riano. In that state of things an agreement, recorded by the surveyor in his process verbal, signed by all the parties, was entered into, according to which a line crossing the canal at right angles was run through the land, lying on the right side, so as to make up the deficiency in Riano’s tract out of Marigny’s purchase. At the same time and in the same proces verbal, P. Marigny stipulates a reservation in these words: “bien entendido que el susdicho Pedro de Marigny se reserva los treint a pies de los dos bordos del canal:" “It being well understood that P. Marigny reserves to himself the thirty feet on both sides of the canal.” This reservation of the thirty feet, whether it applies only to the part then abandoned or to the whole, is equally expressive of the inten *714 tion of the parties, and of their understanding of the reservation made by Sigur. It is no longer called a passage of thirty feet, but the thirty feet. Thirty feet of what! Thirty feet of passage? the construction would be ridiculous. No: they are the thirty feet of ground, reserved by the vendor, for a passage.
The declaration of the parties would he sufficient, if made voluntarily and gratuitously; but from the circumstances of the case, we see that it was given for a consideration. The agreement recorded in the proces verbal is clearly, though not expressly, a compromise by which the parties with a view to remove the difficulty which might have arisen from some ambiguity in their titles, have made to one another mutual concessions.—In vain is it said that this agreement is not such an act as the laws require for the conveyance of real property. The property of the thirty feet was not here conveyed to Marigny, but recognized by the other parties to be in him. The agreement does not contain a conveyance, but yields a doubtful pretention to the party who has the best claim. It has put the question at rest in the same manner as if judgment had passed thereupon: Non minorem auctoritatem transactionum, quam rerum judicatarum esse, recta ratione placuit. l. 20. C. de trans.
Turner for the plaintiff. Moreau for the defendants.
As a confirmation of this, we might mention the subsequent conduct of the parties, in carrying the contract into effect in conformity with the above interpretation, as the record shews; but enough being found in the written instruments to pronounce in favor of the defendant, we will avoid entering uselessly into the investigation of any question relative to the admissibility of the oral evidence produced.
It is ordered, adjudged and decreed that the judgment of the district court be reversed, and that judgment be entered for the defendant, with costs.